YALE PETROLEUM COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109561. Promulgated November 29, 1943.

*A. F. Lamey, Esq.,* and *James H. Kilbourne, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

## OPINION.

BLACK, *Judge*: In this proceeding there is no controversy as to the amounts which petitioner paid on indebtedness which it owed Sinclair-Wyoming by reason of its assumption of the obligations which had been created when Sinclair-Wyoming conveyed five oil leases to Henry J. Coleman, who was acting for Hancock, Fortin, and Stock, who purchased the leases for the purpose of conveying them to a corporation shortly to be organized. The amount so paid in 1938 was $95,000.

The Commissioner in his determination of the deficiency has denied petitioner any dividends paid credit under the provisions of the Revenue Act of 1938 because, he contends, the obligation upon which petitioner made the payments in 1938 was not one "issued by the corporation and in existence at the close of business on December 31, 1937."

The Commissioner concedes that the obligation itself upon which the payments were made in 1938 was one which was in existence at the close of business on December 31, 1937, but he contends that the obligation was not one which had been "issued" by the corporation within the meaning of the statute. The applicable statute is section 27 (a) (4), Revenue Act of 1938, and is printed in the margin.[1]

---

[1] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

(a) DEFINITION IN GENERAL.—As used in this title with respect to any taxable year the term "dividends paid credit" means the sum of:

\* \* \* \* \* \* \*

(4) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness.

The amendment to section 27 (a) (4) of the Revenue Act of 1938 which is carried in section 222 of the Revenue Act of 1939 and is made applicable to taxable years beginning after December 31, 1937, has no application to this proceeding.

The applicable Treasury regulation is article 27 (a)-3 of Regulations 101, printed in the margin.[2]

We have no doubt that the obligation created by the agreement of February 12, 1937, created an "indebtedness" as that term is usually and ordinarily understood, and that this indebtedness was secured by a mortgage in Sinclair-Wyoming's favor on the five leases which they conveyed to Coleman. We also have no doubt that petitioner legally assumed and agreed to pay this indebtedness when the leases were transferred by Coleman to petitioner. We do not understand that the Commissioner contests the foregoing propositions. But was this indebtedness upon which petitioner made the $95,000 payments in 1938 an indebtedness of the corporation, "evidenced  *  *  *  by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, *issued* by the corporation and in existence on December 31, 1937"? The Commissioner contends that the mortgage, which admittedly was in existence on December 31, 1937, and upon which the $95,000 here involved was paid, was not a mortgage "issued" by petitioner. That is the pivotal question we have to decide.

It is undoubtedly true that the agreement of February 12, 1937, was adopted by petitioner after its organization was completed in April 1937. This adoption and assumption by petitioner of the obligations and benefits of the agreement made the contract that of petitioner after its adoption. *Bankers' Construction Co.* v. *American National Bank of Cheyenne,* 222 Pac. 33 (Supreme Court of Wyoming). In that case the court said:

---

As used in this paragraph the term "indebtedness" means only an indebtedness of the corporation existing at the close of business on December 31, 1937, and evidenced by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937, or by a bill of exchange accepted by the corporation prior to, and in existence at, the close of business on such date. Where the indebtedness is for a principal sum, with interest, no credit shall be allowed under this paragraph for amounts used or set aside to pay such interest.

[2] ART. 27 (a)-3. *Amounts used or irrevocably set aside to pay or to retire indebtedness.*— (a) *Indebtedness.*—The term "indebtedness" means an obligation of the corporation, absolute and not contingent, to pay, on demand or within a given time, in cash or other medium, a fixed amount, existing at the close of business on December 31, 1937, and evidenced at the time payment is made  *  *  *  by a bond, note, debenture, certificate of indebtedness, mortgage, or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937,  *  *  *.

*   *   *   *   *   *   *

Indebtedness incurred through the assumption of the liabilities of another is not indebtedness within the meaning of section 27 (a) (4), even though such assumption took place prior to January 1, 1938, unless evidenced by one or more of the instruments enumerated in such section, issued by the taxpayer prior to, and in existence at, the close of business on December 31, 1937. Similarly, indebtedness represented by a renewal obligation issued after December 31, 1937, will not be classed as indebtedness for the purposes of section 27 (a) (4).

A contract made by the promoters of a corporation, as were Hay & Kinney in this case, for and on behalf of respondent, before it is formed, becomes the contract of the corporation, so that it is both entitled to the benefit thereof and liable thereon, if it adopts it after it comes into existence.

This is a familiar rule of law and many cases could be cited in support of it. See 1 Fletcher Cyclopedia Corporations (Perm. Ed.) 681.

In *McArthur* v. *Times Printing Co.*, 51 N. W. Rep. 216, the Supreme Court of Minnesota said:

* * * Although the acts of a corporation with reference to the contracts made by promoters in its behalf before its organization are frequently loosely termed "ratification," yet a "ratification," properly so called, implies an existing person, on whose behalf the contract might have been made at the time. There cannot, in law, be a ratification of a contract which could not have been made binding on the ratifier at the time it was made, because the ratifier was not then in existence. [Citing authorities.] What is called "adoption," in such cases, is, in legal effect, *the making of a contract of the date of the adoption, and not as of some former date.* * * * [Italics supplied.]

If *McArthur* v. *Times Printing Co.*, *supra*, states the correct rule, and we think it does, then when petitioner on April 15, 1937, adopted the contract and mortgage executed by Coleman on behalf of Hancock, Fortin, and Stock, promoters of petitioner, it, in legal effect, made a contract with Sinclair-Wyoming carrying all the rights and obligations carried in the contract signed by Coleman and dated February 12, 1937. But the date of petitioner's contract thus made by adoption is April 15, 1937, and not February 12, 1937. Up to the date of April 15, 1937, the contract was that of Hancock, Fortin, and Stock. After that date it was the contract of petitioner, although Hancock, Fortin, and Stock may still have been liable under it. This latter question we need not decide, because it is not involved.

Webster's New International Dictionary, unabridged, second edition, defines the word "issue" as carrying among other things the following meaning: "To send out officially; to deliver by authority; to publish or utter; to emit; as to issue an order, a writ." Was the mortgage upon which the petitioner made the payment in 1938 of $95,000 one "issued" by petitioner within the meaning of that word as used in section 27 (a) (4) of the Revenue Act of 1938? We think it was. Once petitioner adopted the contract and mortgage of February 12, 1937, as its own, as it clearly did on April 15, 1937, petitioner was as firmly bound thereby as though it had signed the original contract and mortgage. The signing of a new contract and the *issuing* of a new mortgage by petitioner would have been a useless gesture under the authorities we have cited. Therefore, we think it is correct to hold that, by virtue of petitioner's adoption on April 15, 1937, of the contract and mortgage of its promoters, the mortgage became one "issued" by petitioner on April 15, 1937, within the intendment of the statute. The statute says that in order to get the

dividends paid credit the mortgage must have been one "issued by the corporation and in existence at the close of business on December 31, 1937." Under our interpretation as above set out, the mortgage involved in the instant case meets the above test.

The Commissioner relies strongly upon *Little John Coal Co.* v. *Smith*, 135 Fed. (2d) 666. In that case the contention was made by the taxpayer that where the promoters of a corporation entered into a contract for its benefit the contract when adopted by the corporation became its contract and that it was therefore executed by the taxpayer prior to May 1, 1936. The provision of the statute involved in that case was section 26 (a) (2) of the Revenue Act of 1936, which allowed a taxpayer corporation a dividends paid credit of:

An amount equal to the portion of earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt * * *

The credit was disallowed, however, because the contract was not executed by the taxpayer prior to May 1, 1936, as provided by the statute. It should be pointed out that the taxpayer in that case, Little John Coal Co., was not incorporated until June 16, 1936, which was one month and 16 days after the pivotal date fixed by section 26 (a) (2), to wit, May 1, 1936. This, we think, makes *Little John Coal Co.* v. *Smith*, *supra*, distinguishable from the instant case on its facts.

Another case cited by the Commissioner in support of his contention is *Kolor-Thru Corporation*, 44 B. T. A. 1303. That case involved the construction of section 26 (c) (1) of the Revenue Act of 1936, and we held that the contract entered into by the promoters of the taxpayer was not *executed* by the taxpayer within the meaning of section 26 (c) (1) of the Revenue Act of 1936 and that the taxpayer was not entitled to the dividends credit provided for in that section. Whereas section 26 (c) (1) of the Revenue Act of 1936 was involved in the *Kolor-Thru Corporation* case, section 27 (a) (4) of the Revenue Act of 1938 is involved in the instant case and the language of the two statutes is different. However, if it is thought that this fact is insufficient to distinguish the two cases, then we think our holding in the *Kolor-Thru Corporation* case was wrong and should not be followed in the instant case.

For the reasons above stated we think petitioner is entitled to the dividends paid credit which it claims, and on this issue the Commissioner is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

LEECH and HILL, *JJ.*, dissent.